## Ball et al. v. Cecil et al.

Feb. 14, 1941.

Frank E. Daugherty and Garland R. Hubbard for appellant.

Andrew W. Nichols and William R. Gentry for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

On Aug. 1, 1931, William F. Cecil, a widower 77 years of age and owner of considerable property, entered into an antenuptial agreement with Mrs. Willamina Dwight, a widow 56 years of age, which recited that the contracting parties were about to be married and desired to establish their respective rights in each

other's property after marriage. Cecil took no interest in what little property Mrs. Dwight possessed, but in consideration of her marrying him and making him a faithful and helpful wife so long as he lived, he agreed she should receive from his estate at his death $500 in cash, and a life interest in the "home farm." Immediately following a description of the farm in the contract appears these words; "with remainder in fee in said farm to my grandson, Oliver Ball, the son of my daughter, Flora Ball, now, Mrs. Alfred Livers."

The marriage which was performed on Aug. 3, 1931, was of short duration, being followed by a separation on the following Nov. 9th, on which date Mr. and Mrs. Cecil entered into a written separation agreement by which he paid her $850 and she released all claims in her husband's property. A judgment of divorce was obtained by Mrs. Cecil on Feb. 18, 1933, which adjudged neither of the parties should take any interest in the property of the other.

Mr. Cecil died intestate in 1939, leaving a large number of heirs-at-law, some of whom were infants, being the issue of one of his deceased children. His administrators and adult heirs brought this action under Section 639a—1 et seq., Civil Code of Practice (known as the Declaratory Judgment Act) against Oliver Ball, joining with him as defendants the infant heirs. The petition as amended alleged that the sole purpose of the antenuptial contract was to settle the property rights between the parties and that Ball took no interest in the "home farm" by virtue of such contract; that the subsequent agreement made between Mr. and Mrs. Cecil in contemplation of divorce, and the divorce judgment which followed, settled all their property rights. A judgment was asked declaring that Ball took no interest in the farm by virtue of the marriage contract.

Ball pleaded that the antenuptial contract was made partly for his benefit and that it gave him the farm in controversy after Mrs. Cecil's life estate therein terminated, and as Mrs. Cecil through the separation agreement and divorce judgment now had no interest in this farm, he was entitled to a specific performance of that part of the antenuptial contract made for his benefit. The infant defendants through their guardian ad litem filed an answer denying the contract was made

440

for Ball's benefit and asked that he be denied any interest in the farm. The case was submitted to the chancellor for final judgment on the pleadings and exhibits. He adjudged Ball took no interest in the farm through the marriage contract between Mr. and Mrs. Cecil, and Ball appeals. The administrators prosecute a cross-appeal from an order entered by the chancellor striking certain allegations from their pleadings.

It is settled in this State, as well as most jurisdictions in America, that a third party for whose benefit a contract is made may maintain an action thereon; however, he must have been a party to the consideration or the contract must have been made for his benefit, and the mere fact that he will be incidentally benefited by the performance of the contract is not sufficient to entitle him to enforce it. 13 C. J. 709, Section 817; 17 C. J. S., Contracts, Section 519; 12 Am. Jur. 831, Section 280; Hall v. Alford, 105 Ky. 664, 49 S. W. 444; North Western Mutual Life Insurance Co. v. Eddleman, 247 Ky. 116, 56 S. W. (2d) 561, 87 A. L. R. 276; Louisville & N. R. Co. v. Dry Branch Coal Co., 274 Ky. 82, 117 S. W. (2d) 1003; Kelly v. Richards, 95 Utah 560, 83 P. (2d) 731, 129 A. L. R. 164. See also annotations 81 A. L. R. 1286.

Ball being no relation of Mrs. Cecil, and there being no legal or moral obligation on his grandfather, Mr. Cecil, to support an adult grandson capable of earning $120 a month, Ball could not possibly be deemed a party to the consideration of the marriage contract entered into by Mr. and Mrs. Cecil. Nor was the contract made for Ball's benefit and there is nothing to show that either of the contracting parties intended for him to be benefited by their marriage. It is true the contract said Ball should take the "home farm" in fee after the expiration of Mrs. Cecil's life estate therein, but this clause was foreign to the actual contract of marriage and had no connection therewith. Neither of the contracting parties owed Ball anything, therefore he could not be a creditor beneficiary; nor was there any intention on the part of the promisee, Mrs. Cecil, of the marriage contract to obligate the promisor, Mr. Cecil, to make a gift to Ball in consideration of her marrying Cecil. At most, Ball was only an incidental beneficiary under the marriage contract and that was not sufficient to give him a right of action. Merritt v. Scott, 6 Ga.

563, 50 Am. Dec. 365; Kelly v. Richards and other authorities, supra. The antenuptial contract was not in proper form to operate as a deed or as a will, and it is not contended the farm was conveyed or devised to Ball.

Appellants put much faith in Collins v. Bauman, 125 Ky. 846, 102 S. W. 815 and Kalsem v. Froland, 207 Iowa 994, 222 N. W. 3. There is no similarity whatever between the Froland case and the one we are now considering. The antenuptial contract between Froland and his future wife provided that she would adopt his children by a previous marriage and they would inherit from her the same as her natural children. It is patent the marriage contract there was made for the benefit of Froland's children and they were parties to the consideration as much as their father and the woman he intended to marry, which gave such children the right to enforce the covenants of the marriage contract made for their benefit.

In the Collins case the antenuptial agreement provided that all property either of the parties then owned, or might thereafter acquire, should go to the survivor for life and at his or her death the whole estate should go to the children of John Wenderoth (the father of the claimants). Wenderoth willed his estate to his widow for life and at her death to his daughter, Margaret Collins. His other children instituted an action to enforce the provisions of the marriage contract. In upholding the antenuptial contract this court after stating that the intention of the parties should be given effect, wrote [125 Ky. 846, 102 S. W. 816]:

> "They [Wenderoth and his intended wife] were evidently looking to the protection and comfortable support of the survivor of them, whichever that might be, and ultimately to make provision by which the children of John Wenderoth then living and such as he might thereafter have would jointly inherit such property as they might possess at the date of the death of the survivor of them."

The opinion continues:

> "Manifestly, from the wording of this contract and from the interpretation which the parties to it placed upon it, it was not to become operative and effective upon their marriage, but upon the death of either of them."

The contract having been made for the benefit of Wenderoth's children as well as their father and stepmother, and the children being parties to the consideration, the court held they could enforce the contract and defeat the will whereby their father attempted to leave his estate to one child to the exclusion of the other children provided for in the contract.

A reading of the contract before us shows Mr. and Mrs. Cecil were not concerned with anyone's welfare but their own, and as their marriage contract was not made for the benefit of Ball and as he was not a party to the consideration, but could only be incidentally benefited by the parties carrying out the contract, he could not maintain an action on the contract.

Inasmuch as the judgment must be affirmed, the question on the cross-appeal of whether or not the chancellor erred in striking certain allegations from the pleadings of the administrators is now moot and will not be considered. Finley v. Smith, 89 S. W. 547, 28 Ky. Law Rep. 564; Roebuck v. Brown, 198 Ky. 11, 248 S. W. 171; Baker v. Fuller, 227 Ky. 1, 11 S. W. (2d) 963.

The judgment is affirmed.